**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **SURECELL TRANSACTIONS LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Jury Trial Demanded** |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 2:26-cv-00106** |
| **SAMSUNG ELECTRONICS CO., LTD.** | ) | |
| **and SAMSUNG ELECTRONICS AMERICA,** | ) | |
| **INC.,** | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff SureCell Transactions LLC ("SureCell" or "Plaintiff") files this Original Complaint for patent infringement against Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively "Defendants") alleging as follows:

### NATURE OF THE ACTION

1.      This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

2.      Defendants have infringed and continue to infringe, have induced and continue to induce infringement of and contributed and continue to contribute to infringement of, one or more claims of Plaintiff's U.S. Patent Nos. 7,924,156 (the " '156 Patent"), 11,347,949 (the " '949 Patent"), 11,599,734 (the " '734 Patent"), 11,687,741 (the " '741 Patent"), 11,989,612 (the " '612 Patent"), and 12,039,396 (the " '396 Patent") (together collectively the "Asserted Patents") at least by manufacturing, using, selling, offering to sell, and/or importing into the United States products

and/or services which utilize Plaintiff's patented devices and/or methods. The Asserted Patents are directed to accused devices and methods of, for example, performing financial transactions via internal device components with multi-state capability responsive to a Personal Identification Number (PIN) and/or biometric data.

3.      Plaintiff is the legal owner by assignment of the Asserted Patents, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO") to Dr. Steven M. Colby, JD, Ph.D. ("Dr. Colby"), the inventor of the technologies at issue, the named inventor on the Asserted Patents, and the principal of Plaintiff. Dr. Colby is a prolific inventor, and the named inventor on over 40 patents in various technologies issued by the USPTO including the Asserted Patents.

## THE PARTIES

4.      Defendant **SAMSUNG ELECTRONICS CO., LTD.** is a company organized and existing under the laws of the Republic of Korea with a principal place of business located at 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, 443-742 in the Republic of Korea. SAMSUNG ELECTRONICS CO., LTD may be served with process under the Hague Convention.

5.      On information and belief, **SAMSUNG ELECTRONICS CO., LTD.** is the worldwide parent corporation of **SAMSUNG ELECTRONICS AMERICA, INC.** On information and belief **SAMSUNG ELECTRONICS CO., LTD.** designs, manufactures, and provides to the United States a range of digital consumer electronics, including smartphones, wearables and mobile computing devices.   On information and belief, **SAMSUNG ELECTRONICS CO., LTD.** is also involved in the design, manufacture, and provision of both software and hardware products sold by **SAMSUNG ELECTRONICS AMERICA, INC.**

6.      Defendant **SAMSUNG ELECTRONICS AMERICA, INC.** is a New York corporation having a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660 and is a wholly-owned subsidiary of **SAMSUNG ELECTRONICS CO., LTD. SAMSUNG ELECTRONICS AMERICA, INC.** maintains offices and facilities at 6625 Excellence Way, Plano, Texas 75023. **SAMSUNG ELECTRONICS AMERICA, INC.** may be served via its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7.      Upon information and belief, Defendants are engaged in research and development, manufacturing, importation, distribution, sales and related technical services related to mobile devices, specifically and by way of example the manufacture and importation of smartphones[1] smartphone applications and other connected computing devices[2], facilitation of financial transactions using smartphones[3], hosting of an application store for acquisition of smartphone applications whose use on a smartphone or computing device is infringing[4], and promotion of application stores whose content results in infringing use when added to a smartphone[5].

8.      Defendants import, sell and manufacturer infringing products and engage in infringing activity in the United States of America.  Sales to end-users occur via the Internet and via distribution partners, retailers, reseller partners, and solution partners. Those sales occur in the United States, and throughout Texas, including in this District[6].

---

[1] E.g., Samsung Galaxy S22 Ultra, Samsung Galaxy S22 Plus, Samsung Galaxy A72 5G, Samsung Galaxy S22, Galaxy Zfold6 and numerous additional models.
[2] E.g., Samsung Galaxy Laptops Samsung Computers & Accessories: All-in Ones, Desktops & More | Samsung US For example, the "Galaxy Book5 Pro 360." See also Unlocking the Power of NFC: A Comprehensive Guide to Supported Devices - SmartTechSavvy
[3] E.g., using Samsung Pay https://www.samsung.com/us/apps/samsung-wallet/
[4] https://galaxystore.samsung.com/ re PayPal, Venmo, Zelle, Cash App, etc.
[5] E.g., https://play.google.com/
[6] Developer plans for big data center next to Samsung in Taylor; Best Buy in Round Rock, TX - 3201 South Interstate 35 - Electronics, Appliances & More

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                          3

9.      SureCell Transactions LLC is a Nevada limited liability company with a mailing address of PO Box 7837 Reno, NV 89510.

## JURISDICTION AND VENUE

10.      This action arises under the patent laws of the United States, 35 U.S.C. § 101, et seq. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, et seq., 28 U.S.C. § 1331 (federal question jurisdiction) and § 1338 (jurisdiction over patent actions).

11.      This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

12.      This Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.

13.      Defendants each have continuous and systematic business contacts with the State of Texas directly or through subsidiaries or intermediaries, and/or committed acts of patent infringement in Texas as alleged more particularly below.  Defendants transact business within this District and elsewhere in the State of Texas. Further, this Court has personal jurisdiction over Defendants based on their commission of one or more acts of infringement of the Asserted Patents in this District and elsewhere in the State of Texas.

14.      Defendants have placed infringing products into the stream of commerce by shipping those products into Texas or knowing that the products would be shipped into Texas. For example, Defendants have utilized Plaintiff's patented device and method technology in their Samsung Galaxy A56[7] products which are distributed to Defendants' users/customers in this

---

[7] Samsung Galaxy A56 128GB (Unlocked) Awesome Graphite SM-A566UZKAXAA - Best Buy

District, and which facilitate the collection of monies via transactions enacted by and through Defendants' products and the infringement upon the Asserted Patents thereby.

15.    In addition, on information and belief, Defendants' businesses relating to mobile devices, including devices accused of infringement in the Action, are conducted at their Texas facilities.[8]

16.    Upon information and belief, Defendants transact substantial business in the State of Texas and this Judicial District.  Defendants have committed acts of infringement in this District by, among other things, manufacturing[9], offering to sell and selling products that infringe the Asserted Patents, including the accused products as alleged herein, as well as providing service and support to their customers in this District.  Upon information and belief, Defendants directly or indirectly, participate in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas.

17.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, Defendants are subject to personal jurisdiction in this Judicial District, Defendants have regularly conducted business in this Judicial District[10], certain of the acts complained of herein occurred in this Judicial District, and Defendant Samsung Electronics America, Inc. maintains a regular and established place of business at its permanent office in this District located at 6625 Excellence Way, Plano, TX 75023.

18.    Defendant Samsung Electronics America, Inc. also employs full-time personnel, such as engineers and managers in this district, including in Collin County.

---

[8] Including at a permanent office located at 6625 Excellence Way, Plano, TX 75023, on information and belief.
[9] 5G chips Taylor | US Fab | Samsung Semiconductor Global
[10] $17 Billion investment in Taylor, TX. Taylor | US Fab | Samsung Semiconductor Global; Data Center: Big data center planned next to Samsung's $17B chip factory in Taylor

19.    On information and belief, Defendants' business operations relating to cellular mobile devices are conducted at these Samsung Electronics America, Inc. facilities located in the district.

20.    Defendant Samsung Electronics America, Inc. has also committed acts of infringement in this district by commercializing, marketing, selling, distributing, hosting and servicing certain Samsung-branded devices and services, including but not limited to phones, wearables and tablets, which are devices Plaintiff accuses of infringement in this Action.

## ASSERTED PATENTS

21.    Plaintiff is the sole and exclusive owner, by assignment, of the Asserted Patents. Dr. Steven M. Colby, JD, Ph.D. is the sole inventor of each of the Asserted Patents and is sole owner of Plaintiff.  Plaintiff has standing to sue for infringement of the Asserted Patents.

22.    By written instruments duly filed with the United States Patent and Trademark Office, Plaintiff is assigned all rights, title, and interest in the Asserted Patents.  As such, Plaintiff has sole and exclusive standing to assert the Asserted Patents and to bring these causes of action.

23.    The Asserted Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

24.    The Asserted Patents are, together, reflective of several component devices and methods necessary to permit an end-user with a cellular phone or similar mobile device equipped with the patented devices and methods to quickly and securely perform financial transactions using the responsive physical interface and a secure and versatile identification and transmission methodology for financial information necessary to effectuate the transactions.

25.    The priority date of each of the Asserted Patents is at least as early as July 19, 2006[11]. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Asserted Patents overcame a number of specific technological problems in the industry and provided specific technological solutions.

26.    The technological solutions addressed by the Asserted Patents include the various claimed feature combinations of, for example:

a)    biometric and/or PIN based authentication of a financial transaction, [Biometric: i.e.: '949 Patent Cl. 8, 20, 28, 29; '734 Patent Cl. 14, 21 & 30; '741 Patent Cl. 1, 2, 3 & 4, 16 & 21; '612 Patent Cl. 1-5; and '396 Patent Cl. 1, 2 & 19.] [PIN: i.e., '949 Patent Cl. 10, 21, 30; '734 Patent Cl. 6, 12, 15, 22 & 29; and '741 Patent Cl. 12, 14, 19 & 29.]

b)    storage of multiple financial accounts, storage of financial account numbers and storage of account balances, [E.g., '949 Patent Cl. 3, 4, 6, 9, 24 & 27; '734 Patent Cl. 1, 5, 11, 15, 18 & 23; '741 Patent Cl. 1, 8, 9, 10, 11, 15, 17, 18, 19, 22, 23, 24 & 27;  '612 Patent Cl. 1 & 5; and '396 Patent Cl. 9, 10 & 15.]

c)    operation in multiple ON states (e.g., "authenticated" and "non-authenticated") for a financial transaction, wherein the states control information communicated and/or require specific data to change [E.g., '156 Patent Cl. 1, 4, 6, 20, 23, 29, 34, 39, 45, 51, 53, 54, 57 & 60; '949 Patent Cl. 1, 5, 16-18 & 27; '734 Patent Cl. 1, 2, 3, 15-17, 20, 23-25 & 28; '741 Patent Cl. 1, 5, 6, 13, 19 & 25; and '612 Patent Cl. 1.]

d)    storage of transaction logs, [E.g., '949 Patent Cl. 19; '734 Patent Cl. 4; '741 Patent Cl. 7 & 26.]

---

[11] Filing date of '156 patent. Provisional priority is as early as May 6, 2005.

e)    use of a mechanical switch to approve a transaction, [E.g., '156 Patent Cl. 20, 22, 23, 29, 31, 34, 36, 39, 40, 44, 46 & 57; '949 Patent Cl. 13 & 26; '734 Patent Cl. 13; '741 Cl. 20; and '396 Patent Cl. 2.]

f)    entry of transaction amounts, [E.g., '741 Patent Cl. 6; and '396 Patent Cl. 10.]

g)    execution of financial transactions using multiple communication modes, [E.g., '396 Patent Cl. 1, 3, 4, 7, 13, 14 & 19]

h)    storage of a driver's license, [E.g., '396 Patent Cl. 17]

i)    opening of a lock, and/or unlocking of a car, [E.g., '396 Patent Cl. 14 and 16].

27.    On the claimed priority dates of the Asserted Patents, cellular phone technology consisted of simple phones that lacked a touch screen[12] such as the Samsung SGH-X480[13].



---

[12] Samsung 2005 Phones - Detailed Specs of all smartphones; Samsung 2004 Phones - Detailed Specs of all smartphones
[13] Samsung SGH-X480 - Wikipedia.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    8

28.    An advanced phone (Samsung SPH-G1000) came with preloaded games, but was limited by a screen resolution of 240x320 pixels and "scroll-wheel" function navigation.[14]



29.    These phones supported DCMA or GSM networks. Upon information and belief, such phones did not support authenticated financial transactions, much less NFC, Wi-Fi financial transactions authenticated using a PIN or biometrics[15].

30.    The Asserted Patents each include numerous claims defining distinct inventions. No single claim is representative of any other.

31.    Representative claim charts and supporting evidence of infringement are attached hereto as Appendix A.

32.    **The '156 Patent,** a utility patent entitled "Electronically switchable RFID Tags", pertains to radio frequency identification ("RFID") related inventions for mobile transactions using near-field communications, and claims priority to a variety of patent applications filed between May 6, 2005 and May 26, 2006. The Claims of the '156 Patent are directed to, for example, a

---
[14] Samsung SPH-G1000 - Wikipedia
[15] Samsung SPH-G1000 user opinions and reviews

device including a mechanical switch configured for selecting between two or more ON states of an RFID device, the transmission of an RF signal being dependent on the selection of the ON states, the change in states optionally being dependent on a key stored in memory and the RFID device optionally being disposed within a cellular telephone.  The clams are also directed to methods of communicating a signal based on the state of a device, the state being dependent on a mechanical switch.

33.     The '156 Patent was issued by the USPTO on April 12, 2011. Plaintiff is the owner of the '156 Patent and a true and correct copy of the '156 Patent is attached hereto as Exhibit A. The '156 patent is entitled to 1126 days of patent term extension.

34.     The '156 Patent claims in part (Claim 20):

**20.** A RFID tag comprising:

a mechanical switch configured for selecting between two or more ON states of the RFID tag;
an antenna configured to receive data in a first RF signal, to receive energy from the first RF signal, and to transmit data in a second RF signal; and
integrated circuitry including an input configured to receive data from the antenna, an output configured to provide the second RF signal to the antenna for transmission, a state memory configured to store a state of the RFID tag, and a switch logic configured to receive data from the input, and to determine whether or not to provide the second RF signal to the antenna for transmission, the determination being responsive to the state stored in the state memory or the mechanical switch.

35.     **The '949 Patent,** a utility patent, is entitled "Cellular Device Including an Inductive Antenna."  Claims are directed to a cellular telephone configured to engage in financial transactions responsive to one or more electronic switches, selection from among financial accounts, user approval of transactions, transaction encryption, use of PIN or biometric sensor for authentication, and multiple ON states for electronic transactions using an inductive antenna.

36.    The '949 Patent was issued by the USPTO on May 31, 2022. Plaintiff is the owner of the '949 Patent and a true and correct copy of the '949 Patent is attached hereto as Exhibit B.

37.    The '949 Patent claims in part (Claim 1):

**1.** An electronic communication system comprising:
a cellular telephone configured to communicate wirelessly using an inductive coupling, wherein the inductive coupling is part of a circuit including an electronic switch configured to change between states of the circuit and configured to communicate via the inductive coupling responsive to the states of the circuit.

38.    **The '734 Patent**, a utility patent, entitled "Methods of Inductive Communication in a Cellular Telephone", pertains to methods of performing financial transactions. For example, by communicating with a point-of-sale device.   These methods include, for example, the communication of financial account information responsive to states of the cellular telephone (e.g., authentication states), the storage of transaction logs, selection between a plurality of financial accounts, encryption of financial account information, use of a mechanical switch to approve a transaction, use of a PIN to allow or approve a financial transaction, use of biometric data to allow or authenticate financial transactions, etc.

39.    The '734 Patent was issued by the USPTO on March 7, 2023.  Plaintiff is the owner of the '734 Patent and a true and correct copy of the '734 Patent is attached hereto as Exhibit C.

40.    The '734 Patent claims in part (Claim 1):

**1.** A method of performing a financial transaction, the method comprising:
placing a cellular telephone within reading range of a wireless point of sale device, the cellular telephone being configured to communicate wirelessly using an inductive coupling, wherein the inductive coupling is responsive to a circuit including an electronic switch configured to change between states of the circuit and configured to communicate via the inductive coupling responsive to the state of the circuit;
activating the electronic switch within the cellular telephone to change the state of the circuit; and communicating financial account information from the cellular telephone to the point of sale device responsive to the state

of the circuit to facilitate the financial transaction, the communication of the financial account information using the inductive coupling.

41.    **The '741 Patent,** a utility patent, is entitled "Methods of Using a Cellular Telephone." Claims are directed to methods of performing financial transactions using a cellular telephone. For example, claims include switching the state, e.g., authorization state, of a cellular phone using a biometric sensor, storage of transaction logs, selection from among financial accounts, entering transaction amounts, entering and storage of account numbers, use of a mechanical switch or biometric for authentication, etc. The method claims of the '741 Patent are not limited to NFC and may include other types of RF communications, e.g., Wi-Fi or Cellular communications.

42.    The '741 Patent was issued by the USPTO on June 27, 2023. Plaintiff is the owner of the '741 Patent and a true and correct copy of the '741 Patent is attached hereto as Exhibit D.

43.    The '741 Patent claims in part (Claim 1):

**1.** A method of performing a financial transaction using a cellular telephone, the method comprising:

placing the cellular telephone within reading range of a wireless communication device, the cellular telephone being configured to communicate wirelessly using an inductive coupling and an RF antenna, wherein communication by the cellular telephone is responsive to a circuit including an electronic switch configured to change a state of the circuit, the circuit being configured to communicate responsive to the state of the circuit;

activating the electronic switch within the cellular telephone to change the state of the circuit, activation of the electronic switch being responsive to a biometric sensor included in the cellular telephone; and

communicating financial account information from the cellular telephone to the wireless communication device responsive to the state of the circuit to facilitate the financial transaction, the communication of the financial account information using the inductive coupling or the RF antenna.

44.    **The '612 Patent,** a utility patent, is entitled "Cellular Telephone Including Biometric Sensor." Claims of the '612 Patent are directed to methods of performing financial transactions including, for example, placing a cellular telephone within reading range of a point-

of-sale device and activating an electronic switch within the cellular telephone to execute a financial transaction, the electronic switch optionally being responsive to a biometric sensor.

45.    The '612 Patent was issued by the USPTO on May 21, 2024. Plaintiff is the owner of the '612 Patent and a true and correct copy of the '612 Patent is attached hereto as Exhibit E. The '612 Patent is entitled to 208 days of term extension.

46.    The '612 Patent claims in part (Claim 1):

1. A method of performing a financial transaction, the method comprising:
placing a cellular telephone within reading range of a wireless point of sale device, the cellular telephone being configured to communicate wirelessly using an inductive coupling, wherein the inductive coupling is responsive to a circuit including an electronic switch configured to change between states of the circuit and configured to communicate via the inductive coupling responsive to a first of the states of the circuit;
activating the electronic switch within the cellular telephone to change between the states of the circuit, activation of the electronic switch being responsive to a biometric sensor; and
communicating financial account information from the cellular telephone to the point of sale device responsive to the first of the states of the circuit to facilitate the financial transaction, the communication of the account information using the inductive antenna.

47.    **The '396 Patent**, a utility patent, is entitled "Cellular Telephone Including Biometric Control of Transactions."  The claims of the '396 Patent are directed to a cellular telephone using two or more different wireless communication modes in different radio frequency ranges and using a biometric to approve financial transactions.  For example, claims are directed to financial transactions over a cellular communication network, Wi-Fi, and/or RFID. Other claims are directed to use of a cellular telephone to open a lock, unlocking a car, storage of a driver's license on a cellular telephone, selection between financial accounts, entry of credit card information or transaction amounts, etc.

48.    The '396 Patent was issued by the USPTO on July 16, 2024.  Plaintiff is the owner of the '396 Patent and a true and correct copy of the '396 Patent is attached hereto as Exhibit F.

49.  The '396 Patent claims in part (Claim 1):

1.  A cellular telephone configured to use two or more different wireless communication modes, the cellular telephone comprising:
    circuits configured to operate in a first wireless mode for cellular operation and in a second wireless mode for short range communication, wherein the first and second modes are characterized by use of different radio frequency ranges and the circuits are configured to perform financial transactions;
    a biometric sensor, wherein the circuits are configured to approve the financial transactions responsive to the biometric sensor; and
    an inductive antenna configured for communication of signals in the second mode.

## THE ACCUSED INSTRUMENTALITIES

50.  Upon information and belief, Defendants make, sell, use, manufacture, offer for sale, and/or import into the United States apparatuses and methods for performing financial transactions and other activities covered by the Asserted Patents, including their mobile devices (e.g., smartphones and other computing devices), as represented below, and including all augmentations to these platforms or descriptions of platforms. Collectively, all the foregoing are referred to herein as the "Accused Instrumentalities."

51.  Defendants offer for sale in the United States a large number of mobile devices configured to engage in mobile transactions.



52.  On information and belief, the current Samsung smartphones and wearables supporting mobile transactions include, for example:[16] **Phones:** Galaxy Z Fold7 | Z Flip7 | Z Flip7

---

[16] https://nerdytechblog.com/what-samsung-phone-has-nfc/; Top 10 Affordable Samsung NFC Smartphones |

FE; Galaxy Z Fold6 | Z Flip6; Galaxy Z Fold5 | Z Flip5; Galaxy Z Fold4 | Z Flip4; Galaxy Z Fold3 | Z Flip3 5G; Galaxy Z Fold2 5G; Galaxy Z Flip; Galaxy Fold; Galaxy Note20 | Note20 Ultra 5G; Galaxy Note10 Lite; Galaxy Note10 | Note10+; Galaxy Note9; Galaxy Note8; Galaxy Note Fan Edition; Galaxy Note5; Galaxy S25 FE; Galaxy S25 | S25+ | S25 Ultra; Galaxy S24 FE; Galaxy S24 | S24+ | S24 Ultra; Galaxy S23 FE 5G; Galaxy S23 | S23+ | S23 Ultra 5G; Galaxy S22 | S22+ | S22 Ultra 5G; Galaxy S21 FE 5G; Galaxy S21 | S21+ | S21 Ultra 5G; Galaxy S20 FE | S20 FE 5G; Galaxy S20 | S20+ | S20 Ultra; Galaxy S10 Lite; Galaxy S10e | S10 | S10+; Galaxy S9 | S9+; Galaxy S8 | S8+; Galaxy S7 edge | S7; Galaxy S6 edge+; Galaxy M62; Galaxy M56 5G; Galaxy M55 5G; Galaxy M54 5G; Galaxy M53 5G; Galaxy M52 5G; Galaxy M36 5G; Galaxy M35 5G; Galaxy M34 5G; Galaxy M33 5G; Galaxy M32; Galaxy M23 5G; Galaxy M22; Galaxy M16 5G; Galaxy M15 5G; Galaxy A73 5G; Galaxy A72; Galaxy A71; Galaxy A56 5G; Galaxy A55 5G; Galaxy A54 5G; Galaxy A53 5G; Galaxy A52s 5G; Galaxy A52 | A52 5G; Galaxy A51; Galaxy A50s; Galaxy A42 5G; Galaxy A36 5G; Galaxy A35 5G; Galaxy A34 5G; Galaxy A33 5G; Galaxy A32 | A32 5G; Galaxy A31; Galaxy A30s; Galaxy A26 5G; Galaxy A25 5G; Galaxy A24; Galaxy A23 5G; Galaxy A80; Galaxy A17 | A17 5G; Galaxy A16 | A16 5G; Galaxy A15 | A15 5G; Galaxy A9 (2018); Galaxy A9 Pro; Galaxy A8 Star; Galaxy A8 | A8+; Galaxy A7 (2018); Galaxy A7 (2016 & 2017); Galaxy A5 (2016 & 2017); Samsung SGH-D500E; and Samsung SGH-X700N;

**Wearables:** Gear S3; Gear Sport; Galaxy Watch; Galaxy Watch Active; Galaxy Watch Active2; Galaxy Watch3; Galaxy Watch4; Galaxy Watch4 Classic; Galaxy Watch5 | Watch5 Pro; Galaxy Watch6 | Watch6 Classic; Galaxy Watch7; Galaxy Watch8 | Watch8 Classic; and Galaxy Watch Ultra.[17]

---

Samsung MY; Samsung Pay - Supported Devices | Samsung Malaysia; List of NFC-enabled mobile devices - Wikipedia

[17] See List of NFC-enabled mobile devices - Wikipedia for complete list.

53.    On information and belief, Defendants provide and support the Samsung Pay payment application.[18]

54.    On information and belief, Defendants provide and support the Samsung Blockchain Wallet.[19]

55.    On information and belief, Defendants support application stores from which payment applications can be downloaded.  Specifically, Defendants support and provide access to the Amazon Appstore, Google Play app store and the Samsung Galaxy Store from which a wide variety of payment applications can be downloaded.  These payment applications include at least Samsung Pay, Samsung Blockchain Wallet, BofA App, Wells Fargo App, Chase App, PayPal[20], Venmo[21], Zelle, Cash App[22], Google Pay[23], Starbucks App[24], Chime, Money Lion and Coinbase.

56.    On information and belief, Defendants support the execution of mobile applications configured for financial transactions on NFC enabled smartphones including at least those smartphones and payment apps listed above.

57.    On information and belief, Defendants support the execution of mobile applications configured for remote lock operation  on smartphones including at least those smartphones and mobile apps provided by, for example, SmartThings[25]; Google Home[26], Blink[27], Schlage Home[28],

---

[18] Samsung Wallet | Apps & Services | Samsung US
[19] Samsung Blockchain Wallet
[20] Android Apps by PayPal Mobile on Google Play
[21] Venmo - Apps on Google Play
[22] cash app - Android Apps on Google Play
[23] Also referred to as Google Wallet Google Wallet - Your Fast and Secure Digital Wallet.
[24] Starbucks® App for iPhone® and Android™: Starbucks Coffee Company
[25] Smart home with Samsung SmartThings | Samsung US
[26] Download Google Home app - Google Home
[27] Blink Smart Security
[28] Schlage Home app | Control your smart lock from your phone.

Yale[29], Nest[30], Ring[31], Smart Home Manager[32], Toyota[33], Ford[34], Nissan[35], General Motors & Chevrolet[36], Audi, BMW, Genesis, Mercedes-Benz, RAM, Volvo, Polestar, and Tesla[37]

58.    On information and belief, current Samsung computers supporting mobile transactions include, for example: Samsung Ativ Tab; Samsung Galaxy Tab Active; Galaxy Tab Active 2; Galaxy Tab Active 3; Samsung Galaxy Tab S8, Samsung Galaxy Tab S9+ and Samsung Galaxy Tab S7.

## <u>GENERAL ALLEGATIONS OF PATENT INFRINGEMENT</u>

59.    As detailed below and in the accompanying claim charts (Appendix A and Exhibits 1-6 thereto), Defendants have infringed (and continue to infringe) one or more of the claims of the Asserted Patents by making, using, selling, offering for sale, and/or importing into the United States at least the Accused Instrumentalities.  For example, mobile devices (e.g., smartphones) and/or computing devices (e.g., tablet computers) include the various claimed feature combinations described in Paragraph 26.

60.    As a result of Defendants' infringement of the Asserted Patents, Plaintiff has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## <u>COUNT I:  INFRINGEMENT OF U.S. PATENT NO. 7,924,156</u>

61.    Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1- 60 above as if set forth herein.

---

[29] Download the Yale Access App for US & Canada | Yale Home
[30] https://home.nest.com/
[31] Home Security Systems - Cameras, Alarms, Doorbells | Ring
[32] Smart Home Manager App - Manage your Wi-Fi | AT&T Internet
[33] Toyota App
[34] Ford™ - Apps on Google Play
[35] MyNISSAN Mobile App | NissanConnect
[36] Send Remote Commands | Vehicle Support | Chevy
[37] Use a Digital Key with Samsung Wallet | Samsung CA;

62.    Defendants have been on actual notice of the '156 Patent at least as early as the dates of service of this Complaint in this litigation.

63.    Defendants have had knowledge of the '156 Patent and of Plaintiff's claims of infringement of the '156 Patent at least as of the dates of service of this Complaint.

64.    Defendants manufacture, sell, offer for sale, own, direct, and/or control the operation of the Accused Instrumentalities and generate substantial financial revenues and benefits therefrom.[38]

65.    Defendants have directly infringed and continue to directly infringe one or more claims of the '156 Patent in violation of 35 U.S.C. 271(a).  For example, Claims 20, 29 and 60 are infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendants directly make and sell the infringing Accused Instrumentalities at least because they are solely responsible for placing the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendants manufacture, import, sell, practice and/or provide the smartphones, wearables and tablet computers listed above and including all the limitations of Claims 20 and 29, which when used results in execution of the method of Claim 60.

66.    On information and belief, Defendants directly infringe at least Claims 20, 24, 25, 29, 32, 34, 37, 57, 58 & 60 of the '156 Patent.  See Appendix A – Exhibit 1  - Exemplary Claim Charts and Evidence of Infringement of the '156 Patent.

67.    On information and belief, Defendants directly use the infringing Accused Instrumentalities at least because they assemble the combined infringing elements and make them

---

[38] Samsung Statistics (2025): Users, Revenue, Market Share

collectively available in the United States, including via the Application Stores listed above and/or software applications provided on Samsung smartphones, wearables and tablets listed above, as well as via their internal systems and interfaces.  On further information and belief, Defendants have directly infringed by using the  Accused Instrumentalities as part of their ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendants to make and use the Accused Instrumentalities in an infringing manner.  On further information and belief, Defendants are direct infringers by virtue of their branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

68.     As shown above, Defendants are making, using, selling, and offering for sale the Accused Instrumentalities.  On information and belief, Defendants own, direct, and/or control the infringing methods of operation of the Accused Instrumentalities.  For example, by providing an operating system for the execution of infringing payment applications, storage of device states, storage of financial account information, and provision of security protocols, provision of a PIN entry user interface, provision of communication means and provision of a biometric sensor for use by infringing payment applications.

69.     In the alternative, Plaintiff alleges that Defendants indirectly infringe the '156 Patent by inducing direct infringement by others and/or contributing to the infringement by others of the '156 Patent  by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '156 Patent. This includes, without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services,

Defendants injured Plaintiff and are thus liable to Plaintiff for infringement of the '156 Patent under 35 U.S.C. § 271.

70.    On information and belief,  Defendants have taken active steps to induce infringement of the '156 Patent, in violation of 35 U.S.C. § 271(b), such as by allowing and promoting the installation of infringing payment applications on Samsung smartphones, wearables and tablet computers, advertising an infringing use, provision of applications which infringe when used by end users, and provision of application stores from which infringing (Defendants' or third-party) applications can be downloaded. For example, Defendants provide access to and/or operate the Galaxy Store, the Google Play Store, and other app stores, which provide a wide range of use of the applications, including those listed elsewhere herein, resulting in infringement of, for example, Claims 20, 29 and 60 of the '156 Patent.

71.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least Claim 20 of the '156 Patent. For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '156 Patent via at least their use of the Accused Products. See, e.g., Appendix A and references cited therein.

72.    On information and belief, Defendants contribute to infringement of the '156 Patent by third parties, in violation of 35 U.S.C. § 271(c), by providing a platform for execution of infringing applications, providing storage for device states, providing storage for financial account information, providing security protocols, providing communication means (e.g., NFC and Wi-Fi antennae), providing PIN entry user interface and providing biometric sensors for use by infringing payment applications, which support a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913,

932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

73.    On information and belief, Defendants' contributory and induced infringement result in infringement of at least Claims 20, 24, 25, 29, 32, 34, 37, 57, 58 & 60 of the '156 Patent by third parties, including end users and publishers of applications listed herein, as detailed in Appendix A, Exhibit 1 - Exemplary Claim Charts of the '156 Patent.

74.    The foregoing infringement on the part of Defendants has caused past and ongoing injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '156 Patent.

75.    Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 11,347,949

76.    Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1- 60 above as if set forth herein.

77.    Defendants have been on actual notice of the '949 Patent at least as early as the dates of service of this Complaint in this litigation.

78.    Defendants have had knowledge of the '949 Patent and of Plaintiff's claims of infringement of the '949 Patent at least as of the dates of service of this Complaint.

79.    Defendants manufacture, sell, offer for sale, own, direct, and/or control the operation of the Accused Instrumentalities and generate substantial financial revenues and benefits therefrom.[39]

80.    Defendants have directly infringed and continue to directly infringe one or more claims of the '949 Patent in violation of 35 U.S.C. 271(a).  For example, Claims 1 and 30 are infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendants directly make and sell the infringing Accused Instrumentalities at least because they are solely responsible for placing the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendants manufacture, import, sell, practices and/or provide the smartphones, wearables and tablet computers listed above and including all the limitations of Claims 1 and 30.

81.    On information and belief, Defendants directly infringe Claims 1-8, 10-12, 14-24 & 26-30 of the '949 Patent.  See Appendix A – Exhibit 2 - Exemplary Claim Charts and Evidence of Infringement of the '949 Patent.

82.    On information and belief, Defendants directly use the infringing Accused Instrumentalities at least because they assembled the combined infringing elements and make them collectively available in the United States, including via the Application Stores listed above and/or software applications provided on Samsung smartphones, wearables and tablets listed above, as well as via their internal systems and interfaces.  On further information and belief, Defendants have directly infringed by using the  Accused Instrumentalities as part of their ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance

---

[39] Samsung Statistics (2025): Users, Revenue, Market Share

necessarily requires Defendants to make and use the Accused Instrumentalities in an infringing manner. On further information and belief, Defendants are direct infringers by virtue of their branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

83.     As shown above, Defendants are making, using, selling, and offering for sale the Accused Instrumentalities. On information and belief, Defendants own, direct, and/or control the infringing methods of operation of the Accused Instrumentalities. For example, by providing an operating system for the execution of infringing payment applications, storage of device states, storage of financial account information, and provision of security protocols, provision of a PIN entry user interface, provision of communication means and provision of a biometric sensor for use by infringing payment applications.

84.     In the alternative, Plaintiff alleges that Defendants indirectly infringe the '949 Patent by inducing direct infringement by others and/or contributing to the infringement by others of the '949 Patent by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '949 Patent. This includes, without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendants injured Plaintiff and are thus liable to Plaintiff for infringement of the '949 Patent under 35 U.S.C. § 271.

85.     On information and belief, Defendants have taken active steps to induce infringement of the '949 Patent, in violation of 35 U.S.C. § 271(b), by such as by promoting the installation of infringing payment applications on Samsung smartphones, wearables and tablet computers, advertising an infringing use, provision of applications which infringe when used by

end users, and provision of application stores from which infringing (Defendants' or third-party) applications can be downloaded. For example, Defendants provide access to and/or operate the Galaxy Store, the Google Play Store, and other app stores, which provide a wide range of use of the applications, including those listed elsewhere herein, resulting in infringement of, for example, Claims 1 and 30.

86.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least Claim 1 of the '949 Patent. For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '949 Patent via at least their use of the Accused Products. See, e.g., Appendix A - Exhibit 2 – Exemplary Claim Charts for the '949 Patent and reference cited therein.

87.    On information and belief, Defendants contribute to infringement of the '949 Patent by third parties, in violation of 35 U.S.C. § 271(c), by providing a platform for execution of infringing applications, providing storage for device states, providing storage for financial account information, providing security protocols, providing communication means (e.g., NFC and Wi-Fi antennae), providing PIN entry user interface and providing biometric sensors for use by infringing payment applications, which support a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

88.    On information and belief, Defendants induce and contribute to infringement, as detailed in Appendix A, Exhibit 2. /  On information and belief, Defendants' inducement and

contribution result in infringement of at least Claims 1-8, 10-12, 14-24 & 26-30 of the '949 Patent by third parties, including end users and publishers of applications listed herein, as detailed in Appendix A, Exhibit 2.

89.     The foregoing infringement on the part of Defendants has caused past and ongoing injury to Plaintiff.   The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '949 Patent.

90.     Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**COUNT III:  INFRINGEMENT OF U.S. PATENT NO. 11,599,734**

91.     Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1- 60 above as if set forth herein.

92.     Defendants have been on actual notice of the '734 Patent at least as early as the dates of service of this Complaint in this litigation.

93.     Defendants have had knowledge of the '734 Patent and of Plaintiff's claims of infringement of the '734 Patent at least as of the dates of service of this Complaint.

94.     Defendants manufacture, sell, offer for sale, own, direct, and/or control the operation of the Accused Instrumentalities and generate substantial financial revenues and benefits therefrom.[40]

95.     Defendants have directly infringed and continue to directly infringe one or more claims of the '734 Patent in violation of 35 U.S.C. 271(a).  For example, Claims 1, 15 & 23 are

---

[40] Samsung Statistics (2025): Users, Revenue, Market Share

infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities. Defendants directly make and sell the infringing Accused Instrumentalities at least because they are solely responsible for placing the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom. More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendants manufacture, import and/or sell, practice and provides the smartphones, wearables and tablet computers listed above and including all the limitations of Claims 1, 15 & 23.

96. On information and belief, the Defendants infringe Claims 1-9, 13-21, 23-28 & 30 of the '734 Patent. See Appendix A – Exhibit 3 - Exemplary Claim Charts and Evidence of Infringement of the '734 Patent.

97. On information and belief, Defendants directly uses the infringing Accused Instrumentalities at least because they assembled the combined infringing elements and make them collectively available in the United States, including via the Application Stores listed above and/or software applications provided on Samsung smartphones, wearables and tablets listed above, as well as via their internal systems and interfaces. On further information and belief, Defendants have directly infringed by using the Accused Instrumentalities as part of their ongoing and regular testing and/or internal legal compliance activities. Such testing and/or legal compliance necessarily requires Defendants to make and use the Accused Instrumentalities in an infringing manner. On further information and belief, Defendants are a direct infringer by virtue of their branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

98. As shown above, Defendants are making, using, selling, and offering for sale the Accused Instrumentalities. On information and belief, Defendants own, direct, and/or control the

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                          26

infringing methods of operation of the Accused Instrumentalities.  For example, by providing an operating system for the execution of infringing payment applications, storage of device states, storage of financial account information, and provision of security protocols, provision of a PIN entry user interface, provision of communication means and provision of a biometric sensor for use by infringing payment applications.

99.    In the alternative, Plaintiff alleges that Defendants indirectly infringe the '734 Patent by inducing direct infringement by others and/or contributing to the infringement by others of the '734 Patent by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '734 Patent. This includes, without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendants injured Plaintiff and are thus liable to Plaintiff for infringement of the '734 Patent under 35 U.S.C. § 271.

100.    On information and belief, Defendants have taken active steps to induce infringement of the '734 Patent, in violation of 35 U.S.C. § 271(b), such as by promoting the installation of infringing payment applications on Samsung smartphones, wearables and tablet computers, advertising an infringing use, provision of applications which infringe when used by end users, and provision of application stores from which infringing (Defendants' or third-party) applications can be downloaded. For example, Defendants provide access to and/or operate the Galaxy Store, the Google Play Store, and other app stores, which provide a wide range of use of the applications, including those listed elsewhere herein, resulting in infringement of, for example, Claims 1-9, 13-21, 23-28 & 30 of the '734 Patent.

101.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least Claim 1 of the '734 Patent. For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '734 Patent via at least their use of the Accused Products. See, e.g., Appendix A- Exhibit 3  and references cited therein.

102.    On information and belief, Defendants contribute to infringement of the '734 Patent by third parties, in violation of 35 U.S.C. § 271(c), by providing a platform for execution of infringing applications, providing storage for device states, providing storage for financial account information, providing security protocols, providing communication means (e.g., NFC and Wi-Fi antennae), providing PIN entry user interface and providing biometric sensors for use by infringing payment applications, which support a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory  infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

103.    On information and belief, Defendants' contributory and induced infringement result in infringement of at least Claims 1-9, 13-21, 23-28 & 30 of the '734 Patent by third parties, including end users and publishers of applications listed herein, as detailed in Appendix A - Exhibit 3 – Exemplary Claim Charts for  the '734 Patent.

104.    The foregoing infringement on the part of Defendants has caused past and ongoing injury to Plaintiff.   The specific dollar amount of damages adequate to compensate for the

infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '734 Patent.

105.    Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## COUNT IV:  INFRINGEMENT OF U.S. PATENT NO. 11,687,741

106.    Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1- 60 above as if set forth herein.

107.    Defendants have been on actual notice of the '741 Patent at least as early as the dates of service of this Complaint in this litigation.

108.    Defendants have had knowledge of the '741 Patent and of Plaintiff's claims of infringement of the '741 Patent at least as of the dates of service of this Complaint.

109.    Defendants manufacture, sell, offer for sale, own, direct, and/or control the operation of the Accused Instrumentalities and generate substantial financial revenues and benefits therefrom.[41]

110.    Defendants have directly infringed and continue to directly infringe one or more claims of the '741 Patent in violation of 35 U.S.C. 271(a).  For example, Claims 1 & 19 are infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendants directly make and sell the infringing Accused Instrumentalities at least because they are solely responsible for placing the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendants

---

[41] Samsung Statistics (2025): Users, Revenue, Market Share

manufacture, import and/or sell, practice and provide the smartphones, wearables and tablet computers listed above and including all the limitations of Claims 1 & 19.

111.    On information and belief, Defendants directly infringe at least of Claims 1-13, 15-16, 18-28 & 30 of the '741 Patent.  See Appendix A – Exhibit 4 - Exemplary Claim Charts and Evidence of Infringement of the '741 Patent.

112.    On information and belief, Defendants directly use the infringing Accused Instrumentalities at least because they assembled the combined infringing elements and make them collectively available in the United States, including via the Application Stores listed above and/or software applications provided on Samsung smartphones, wearables and tablets listed above, as well as via their internal systems and interfaces.  On further information and belief, Defendants have directly infringed by using the  Accused Instrumentalities as part of their ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendants to make and use the Accused Instrumentalities in an infringing manner.   On further information and belief, Defendants are direct infringers by virtue of their branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

113.    As shown above, Defendants are making, using, selling, and offering for sale the Accused Instrumentalities.  On information and belief, Defendants own, direct, and/or control the infringing methods of operation of the Accused Instrumentalities.  For example, by providing an operating system for the execution of infringing payment applications, storage of device states, storage of financial account information, and provision of security protocols, provision of a PIN entry user interface, provision of communication means and provision of a biometric sensor for use by infringing payment applications.

114.    In the alternative, Plaintiff alleges that Defendants indirectly infringe the '741 Patent by inducing direct infringement by others and/or contributing to the infringement by others of the '741 Patent by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '741 Patent. This includes, without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendants injured Plaintiff and are thus liable to Plaintiff for infringement of the '741 Patent under 35 U.S.C. § 271.

115.    On information and belief, Defendants have taken active steps to induce infringement of the '741 Patent, in violation of 35 U.S.C. § 271(b), such as by allowing and promoting the installation of infringing payment applications on Samsung smartphones, wearables and tablet computers, advertising an infringing use, provision of applications which infringe when used by end users, and provision of application stores from which infringing (Defendants' or third-party) applications can be downloaded. For example, Defendants provide access to and/or operate the Galaxy Store, the Google Play Store, and other app stores, which provide a wide range of use of the applications, including those listed elsewhere herein, resulting in infringement of, for example, Claims 1 & 19.

116.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least Claim 1 & 19 of the '741 Patent. For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '741 Patent via at least their use of the Accused Products. See, e.g., Appendix A- Exhibit 4 and references cited therein.

117. On information and belief, Defendants contribute to infringement of the '741 Patent by third parties, in violation of 35 U.S.C. § 271(c), by providing a platform for execution of infringing applications, providing storage for device states, providing storage for financial account information, providing security protocols, providing communication means (e.g., NFC and Wi-Fi antennae), providing PIN entry user interface and providing biometric sensors for use by infringing payment applications, which support a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

118. On information and belief, Defendants induce and contribute to infringement of the '741 Patent, as detailed in Appendix A - Exhibit 4 . Such contribution and inducement result in infringement of at least Claims 1-13, 15-16, 18-28 & 30 of the '741 Patent by third parties, including end users and publishers of applications listed herein.

119. The foregoing infringement on the part of Defendants has caused past and ongoing injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '741 Patent.

120. Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 11,989,612

121.    Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1- 60 above as if set forth herein.

122.    Defendants have been on actual notice of the '612 Patent at least as early as the dates of service of this Complaint in this litigation.

123.    Defendants have had knowledge of the '612 Patent and of Plaintiff's claims of infringement of the '612 Patent at least as of the dates of service of this Complaint.

124.    Defendants manufacture, sell, offer for sale, own, direct, and/or control the operation of the Accused Instrumentalities and generate substantial financial revenues and benefits therefrom.[42]

125.    Defendants have directly infringed and continue to directly infringe one or more claims of the '612 Patent in violation of 35 U.S.C. 271(a).  For example, Claims 1-5 are infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities. Defendants directly make and sell the infringing Accused Instrumentalities at least because they are solely responsible for placing the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendants manufacture, import, sell, practice and/or provide the smartphones, wearables and tablet computers listed above and including all the limitations of Claims 1-5.

126.    On information and belief, Defendants directly infringe at least Claims 1-5 of the '612 Patent.  See Appendix A – Exhibit 5  - Exemplary Claim Charts and Evidence of Infringement of the '612 Patent.

---

[42] Samsung Statistics (2025): Users, Revenue, Market Share

127.    On information and belief, Defendants directly use the infringing Accused Instrumentalities at least because they assembled the combined infringing elements and make them collectively available in the United States, including via the Application Stores listed above and/or software applications provided on Samsung smartphones, wearables and tablets listed above, as well as via their internal systems and interfaces.   On further information and belief, Defendants have directly infringed by using the  Accused Instrumentalities as part of their ongoing and regular testing and/or internal legal compliance activities.   Such testing and/or legal compliance necessarily requires Defendants to make and use the Accused Instrumentalities in an infringing manner.   On further information and belief, Defendants are a direct infringer by virtue of their branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

128.    As shown above, Defendants are making, using, selling, and offering for sale the Accused Instrumentalities.   On information and belief, Defendants own, direct, and/or control the infringing methods of operation of the Accused Instrumentalities.   For example, by providing an operating system for the execution of infringing payment applications, storage of device states, storage of financial account information, and provision of security protocols, provision of a PIN entry user interface, provision of communication means and provision of a biometric sensor for use by infringing payment applications.

129.    In the alternative, Plaintiff alleges that Defendants indirectly infringe the '612 Patent by inducing direct infringement by others and/or contributing to the infringement by others of the '612 Patent by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '612 Patent. This includes, without limitation, one or more of the Accused

Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendants injured Plaintiff and are thus liable to Plaintiff for infringement of the '612 Patent under 35 U.S.C. § 271.

130.    On information and belief, Defendants have taken active steps to induce infringement of the '612 Patent, in violation of 35 U.S.C. § 271(b), such as by allowing and promoting the installation of infringing payment applications on Samsung smartphones, wearables and tablet computers, advertising an infringing use, provision of applications which infringe when used by end users, and provision of application stores from which infringing (Defendants' or third-party) applications can be downloaded. For example, Defendants provide access to and/or operate the Galaxy Store, the Google Play Store, and other app stores, which provide a wide range of use of the applications, including those listed elsewhere herein, resulting in infringement of, for example, Claims 1-5.

131.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least Claim 1-5 of the '612 Patent. For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '612 Patent via at least their use of the Accused Products. See, e.g., Appendix A- Exhibit 5 and references cited therein.

132.    On information and belief, Defendants contribute to infringement of the '612 Patent by third parties, in violation of 35 U.S.C. § 271(c), by providing a platform for execution of infringing applications, providing storage for device states, providing storage for financial account information, providing security protocols, providing communication means (e.g., NFC and Wi-Fi antennae), providing PIN entry user interface and providing biometric sensors for use by infringing payment applications, which support a finding of an intention for the accused product to be used

in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

133.    On information and belief, Defendants' contributory and induced infringement result in infringement of at least Claims 1-5 of the '612 Patent by third parties, including end users and publishers of applications listed herein, as detailed in Appendix A, Exhibit 5.

134.    The foregoing infringement on the part of Defendants has caused past and ongoing injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '612 Patent.

135.    Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 12,039,396

136.    Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1- 60 above as if set forth herein.

137.    Defendants have been on actual notice of the '396 Patent at least as early as the dates of service of this Complaint in this litigation.

138.    Defendants have had knowledge of the '396 Patent and of Plaintiff's claims of infringement of the '396 Patent at least as of the dates of service of this Complaint.

139.    Defendants manufacture, sell, offer for sale, own, direct, and/or control the operation of the Accused Instrumentalities and generate substantial financial revenues and benefits therefrom.[43]

140.    Defendants have directly infringed and continue to directly infringe one or more claims of the '396 Patent in violation of 35 U.S.C. 271(a).  For example, Claims 1-17 & 19-20 are infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendants directly make and sell the infringing Accused Instrumentalities at least because they are solely responsible for placing the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendants manufacture, import, sell, practice and/or provides the smartphones, wearables and tablet computers listed above and including all the limitations of Claims 1-17 & 19-20.

141.    On information and belief, Defendants directly infringe at least Claims 1-17 & 19-20 of the '396 Patent.  See Appendix A – Exhibit 6 - Exemplary Claim Charts and Evidence of Infringement of the '396 Patent.

142.    On information and belief, Defendants induce and contribute to infringement of the '396 patent Claims 14 & 16 through support of automotive and smart lock apps, including apps from: SmartThings; Google Home, Blink, Schlage Home, Nest, Ring, Smart Home Manager, and Tesla[44]

143.    On information and belief, Defendants directly use the infringing Accused Instrumentalities at least because they assembled the combined infringing elements and make them collectively available in the United States, including via the Application Stores listed above and/or

---

43 Samsung Statistics (2025): Users, Revenue, Market Share
44 Use a Digital Key with Samsung Wallet | Samsung CA

software applications provided on Samsung smartphones, wearables and tablets listed above, as well as via their internal systems and interfaces. On further information and belief, Defendants have directly infringed by using the Accused Instrumentalities as part of their ongoing and regular testing and/or internal legal compliance activities. Such testing and/or legal compliance necessarily requires Defendants to make and use the Accused Instrumentalities in an infringing manner. On further information and belief, Defendants are direct infringers by virtue of their branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

144.    As shown above, Defendants are making, using, selling, and offering for sale the Accused Instrumentalities. On information and belief, Defendants own, direct, and/or control the infringing methods of operation of the Accused Instrumentalities. For example, by providing an operating system for the execution of infringing payment applications, storage of device states, storage of financial account information, and provision of security protocols, provision of a PIN entry user interface, provision of communication means and provision of a biometric sensor for use by infringing payment applications.

145.    In the alternative, Plaintiff alleges that Defendants indirectly infringe the '396 Patent by inducing direct infringement by others and/or contributing to the infringement by others of the '396 Patent by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '396 Patent. This includes, without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendants injured Plaintiff and are thus liable to Plaintiff for infringement of the '396 Patent under 35 U.S.C. § 271.

146.    On information and belief, Defendants have taken active steps to induce infringement of the '396 Patent, in violation of 35 U.S.C. § 271(b), such as by allowing and promoting the installation of infringing payment applications on Samsung smartphones, wearables and tablet computers, advertising an infringing use, provision of applications which infringe when used by end users, and provision of application stores from which infringing (Defendants' or third-party) applications can be downloaded. For example, Defendants provide access to and/or operate the Galaxy Store, the Google Play Store, and other app stores, which provide a wide range of use of the applications, including those listed elsewhere herein, resulting in infringement of, for example, Claims 1-17 & 19-20.

147.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least Claim 1 of the '396 Patent. For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '396 Patent via at least their use of the Accused Products. See, e.g., Appendix A – Exhibit 6 and references cited therein.

148.    On information and belief, Defendants contribute to infringement of the '396 Patent by third parties, in violation of 35 U.S.C. § 271(c), by providing a platform for execution of infringing applications, providing storage for device states, providing storage for financial account information, providing security protocols, providing communication means (e.g., NFC and Wi-Fi antennae), providing PIN entry user interface and providing biometric sensors for use by infringing payment applications, which support a finding of an intention for the accused product to be used in an infringing manner. See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an

article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

149.    On information and belief, Defendants' contributory and induced infringement result in infringement of at least Claims 1-17 & 19-20 of the '396 Patent by third parties, including end users and publishers of applications listed herein, as detailed in Appendix A – Exhibit 6.

150.    The foregoing infringement on the part of Defendants has caused past and ongoing injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '396 Patent.

151.    Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, SureCell Transactions LLC respectfully requests the Court enter judgment against Defendants as follows:

(1)    Adjudging that Defendants have infringed the Asserted Patents;

(2)    An award of damages to be paid by Defendants adequate to compensate Plaintiff for Defendants' past infringement and any continuing or future infringement of the Asserted Patents up until the date such judgment is entered, and in no event less than a reasonable royalty for Defendants' acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law, costs, and disbursements, including for supplemental damages arising from any continuing post-verdict infringement for the time between trial and entry of the final judgment with an accounting, as needed, pursuant to 35 U.S.C. § 284;

(3)      A judgment and order requiring Defendants to pay Plaintiff reasonable ongoing royalties on a going-forward basis after final judgment;

(4)      A judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendants' willful infringement of the Asserted Patents;

(5)      Adjudging that this case is exceptional under 35 U.S.C. § 285 and awarding enhanced damages, including expert fees and attorneys' fees, to Plaintiff;

(6)      Ordering Defendants to reimburse Plaintiff's costs of suit incurred herein; and

(7)      Granting Plaintiff such further relief as the Court finds appropriate in law and in equity.

## JURY DEMAND

Plaintiff SureCell Transactions, LLC hereby demands a trial by jury of all issues so triable under the law.

Dated:  February 12, 2026

Respectfully Submitted,

By: */s/Joseph R. Callister*
Joseph R. Callister
Texas Bar No. 24059054
Email: joseph.callister@rimonlaw.com
**RIMÔN PC**
17304 Preston Road, Suite 800
Dallas, TX 75252
Telephone & Fax: (214) 306-7996

Gregory A. Krauss
VA State Bar No. 84839
gregory.krauss@rimonlaw.com
**RIMÔN PC**
8484 Westpark Drive
Suite 810
McLean VA 22102
Telephone: (571) 765-7707

John Handy
VA State Bar No. 93882
john.handy@rimonlaw.com
**RIMÔN PC**
8484 Westpark Drive
Suite 810
McLean VA 22102
Telephone: (703) 559-7360

*Robert J. Yorio
CA State Bar No. (93178)
yorio@carrferrell.com
**CARR & FERRELL LLP**
411 Borel Ave, Suite 603
San Mateo, CA 94402
Telephone: (650) 812-3453

**ATTORNEYS FOR PLAINTIFF
SURECELL TRANSACTIONS, LLC**

**Request to Appear Pro Hac Vice
Forthcoming*

# Appendix A

**Exemplary Claim Charts and Evidence of Infringement**

# Exhibits:

**1: - US Patent No.** 7,924,156 (the " '<u>156 Patent</u>"),

**2: - US Patent No.** 11,347,949 (the " '<u>949 Patent</u>"),

**3: - US Patent No.** 11,599,734 (the " '<u>734 Patent</u>"),

**4: - US Patent No.** 11,687,741 (the " '<u>741 Patent</u>"),

**5: - US Patent No.** 11,989,612 (the " '<u>612 Patent</u>"), and

**6: - US Patent No.** 12,039,396 (the " '<u>396 Patent</u>").